OHIO RIVER & W. RY. CO. v. DITTEY et al., Tax Commission of Ohio.

MARIETTA, C. & C. R. CO. v. CREAMER, State Treasurer, et al.

(District Court, S. D. Ohio, E. D. February 15, 1913.)

Nos. 1,593, 1,600.

1. TAXATION (§ 117*)—"EXCISE" TAX ON PRIVILEGE—OHIO STATUTE.

The tax imposed by Ohio Act May 31, 1911 (102 Ohio Laws, pp. 224-260), on railroad companies and other persons and corporations engaged in operating public utilities, which is computed on the gross earnings

of such companies from intrastate business, is an excise tax on the privilege of carrying on such business.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 214: Dec. Dig. § 117.*

For other definitions, see Words and Phrases, vol. 3, p. 2548.]

2. CONSTITUTIONAL LAW (§ 229*)—EQUAL PROTECTION OF LAWS—TAXATION— LIMITATION OF POWER.

While section 2 of the Ohio Bill of Rights, which guarantees the equal protection of the laws as broadly as does the federal Constitution, under the construction placed on it by the Supreme Court of the state, by implication limits the power of taxation of privileges and franchises to the reasonable value of the privilege or franchise as conferred originally, or to its continued value from year to year, the courts may not overthrow a law which imposes such a tax, as in violation of either the federal or state Constitution, merely because in isolated cases it may work a hardship, but such law, if uniform, must be judged by its general operation upon the class to which it applies.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 685; Dec. Dig. § 229.*]

3. COMMERCE (§ 72*)—TAXATION (§ 42*)—EXCISE TAX ON PUBLIC UTILITIES— OHIO STATUTE—CONSTITUTIONALITY.

The provisions of Ohio Act May 31, 1911 (102 Ohio Laws, pp. 224, 260), imposing an excise tax, based on gross earnings, on railroad companies and other persons and corporations engaged in operating public utilities, are not wanting in uniformity of operation because certain utilities of a given class pay one rate of tax and others of another class another rate, nor is the tax, being by express limitation levied on intrastate earnings only, unconstitutional as imposing a burden on interstate commerce.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 123–136; Dec. Dig. § 72;* Taxation, Cent. Dig. §§ 90–95; Dec. Dig. § 42.*]

4. CONSTITUTIONAL LAW (§ 229*)—TAXATION (§ 47*)—EXCISE TAX—EQUAL PROTECTION OF LAWS—DOUBLE TAXATION.

That a corporation pays an ad valorem tax on its property does not render an excise tax imposed on its privilege of doing business unconstitutional, as a denial of the equal protection of the laws by subjecting it to double taxation.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 685; Dec. Dig. § 229; Taxation, Cent. Dig. §§ 104–114; Dec. Dig. § 47.*]

In Equity. Suits by the Ohio River & Western Railway Company against Robert M. Dittey, Frank E. Munn, and Christian Pabst, as the Tax Commission of Ohio, and the Tax Commission of Ohio, and by the Marietta, Columbus & Cleveland Railroad Company against David S. Creamer, Treasurer of the State of Ohio, Edward M. Fullington, Auditor of the State of Ohio, Timothy S. Hogan, Attorney General of the State of Ohio, Robert M. Dittey, Frank E. Munn, and Christian Pabst, as the Tax Commission of Ohio, and the Tax Commission of Ohio. On complainants' application for preliminary injunction and demurrers to bills. Injunction denied.

Robt. J. King, of Zanesville, Ohio, for Ohio River & Western Railway Co.

F. A. Durban and Robt. J. King, both of Zanesville, Ohio, for the Marietta, Columbus & Cleveland R. R. Co.

Timothy S. Hogan, Atty. Gen., of Columbus, Ohio (Clarence D. Laylin, of Columbus, Ohio, of counsel), for defendants.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Before WARRINGTON, Circuit Judge, and SATER and DAY, District Judges.

PER CURIAM. Jurisdiction of these cases is vested in this court through the presence of certain federal questions, no matter how it shall be found necessary to decide them, or whether to decide them at all. Siler v. Louisville & Nashville R. R. Co., 213 U. S. 175, 29 Sup. Ct. 451, 53 L. Ed. 753; Mich. Cent. R. R. Co. v. Vreeland, 227 U. S. 59, 33 Sup. Ct. 192, 57 L. Ed. ——, decided January 20, 1913; L. & N. R. Co. v. Siler (C. C.) 186 Fed. 176. The plaintiff in each of the cases is an Ohio corporation, whose line of road lies wholly within the state. In each case the plaintiff challenges the constitutionality of certain sections of the act of May 31, 1911 (102 Ohio Laws, pp. 224–260), creating a tax commission, and providing for a system of taxation, and imposing a sum which the act recites is in the nature of an excise tax upon the privilege of carrying on intrastate business. A restraining order having been granted in each case, the respective plaintiffs seek a temporary injunction. The defendants, who are certain state officers and members of the Tax Commission, demur to each of the bills. The cases are for hearing on the plaintiffs' applications for interlocutory injunctions and upon the demurrers of the defendants.

The law under consideration is a re-enactment of the act of March 10, 1910. Its history is contained in the brief filed in behalf of the state, but its development need not be traced. The act raises the rate of the so-called excise taxation on certain utilities, substitutes a tax commission for a board of appraisers and assessors, assembles the various tax laws of the state, and incorporates them into one measure. The term "public utility," as used in the act and as defined in section 39, means and embraces each corporation, company, firm, individual, and association, their lessees, trustees, or receivers elected or appointed by any authority whatsoever referred to in such section—a railroad company being one of the many kinds of companies therein mentioned—and includes also any plant or property owned or operated, or both, by any such companies, corporations, firms, individuals, or associations. By the provisions of section 40 any person or persons, firm or firms, copartnership or voluntary association, joint-stock association, company or corporation, wherever organized or incorporated, when engaged in the business of operating a railroad, either wholly or partially within the state, on rights of way acquired and held exclusively by such company, or otherwise, is a railroad company.

Section 42 defines the term "gross earnings"—

"to mean and include the entire earnings for business done by any person or persons, firm or firms, copartnership or voluntary association, joint-stock association, company or corporation, wherever organized or incorporated, from the operation of any public utility, or incidental thereto, or in connection therewith. The gross earnings for business done by an incorporated company, engaged in the operation of a public utility, shall be held to mean and include the entire earnings for business done by such company under the exercise of its corporate powers, whether from the operation of the public utility itself or from any other business done whatsoever."

Section 83 requires a statement to be filed by each railroad company with the Tax Commission containing the entire gross earnings, including all sums earned or charged, whether actually received or not, for the year ending on the 30th day of June next preceding, from whatever source derived, for business done within the state, excluding therefrom, however, all earnings derived wholly from interstate business or business done for the federal government, such statement also to show as a distinct item the total gross intrastate earnings for such period. By the terms of section 97 the Auditor of State in the month of November is required to charge for collection against each railroad company a sum in the nature of an excise tax for the privilege of carrying on its intrastate business. The amount so charged is 4 per cent., and is computed on the gross earnings, as fixed and reported to him by the Commission, of the company's intrastate business for the year covered by its annual report to such Commission, but the tax shall not be less than $10 in any case. The various public utilities named in the act are classified. The percentage charged for collection as an excise tax for the privilege of carrying on intrastate business is the same as to all utilities falling within any given class, but varies as among different classes.

[1] While the mere declaration of the General Assembly that the tax is an excise tax does not make it so, if it is apparent that it cannot be consistently so designated, nevertheless the declaration of the lawmaking body is entitled to much weight. Flint v. Stone Tracy Co., 220 U. S. 107, 145, 31 Sup. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312. In view of the decisions, state and federal, it is plain that the tax in question is an excise tax on the doing of corporate intrastate business; the gross intrastate business being the yardstick or measure of taxable value. Southern Gum Co. v. Laylin, 66 Ohio St. 578, 64 N. E. 564; State v. Ferris, 53 Ohio St. 314, 41 N. E. 579, 30 L. R. A. 218; Ashley v. Ryan, 49 Ohio St. 504, 31 N. E. 721; Western Union Telegraph Co. v. Mayer, 28 Ohio St. 521; Express Co. v. State, 55 Ohio St. 69, 44 N. E. 506; Adler v. Whitbeck, 44 Ohio St. 539, 9 N. E. 672; Thomas v. U. S., 192 U. S. 363, 24 Sup. Ct. 305, 48 L. Ed. 481; Cooley, Const. Lim. (6th Ed.) 608; State Tax on Railway Gross Receipts, 15 Wall. 284, 21 L. Ed. 164.

[2] Each plaintiff contends that, because it is unable to earn upon its investment a reasonable profit attributable to intrastate business, it possesses no privilege worth 4 per cent. of its gross intrastate earnings, and that such a tax is as to it both confiscatory and discriminatory. The Ohio River & Western Railway Company alleges that a tax of 4 per cent. of its gross intrastate earnings is excessive, because, though carefully managed, it does not produce, without the imposition of such tax, a profit equal to the return upon high grade investments at all times available in the money market. The Marietta, Columbus & Cleveland Railway Company charges that it is operated at an actual loss. Are the plaintiffs or either of them for the reasons stated exempt from the excise tax in question? It was held in State v. Ferris, 53 Ohio St. 341, 41 N. E. 584, 30 L. R. A. 218, and is conceded by the plaintiffs, that the first section of the fourteenth amendment to the Constitution of the United States, which provides that no state shall "deny to any

person within its jurisdiction the equal protection of its laws," is no broader than the second section of the Ohio Bill of Rights, and that, therefore, a statute relating to an excise tax authorized by the bill of rights would not conflict with such section of the Constitution of the United States; but the plaintiffs, to maintain their contention, point to the following language in Southern Gum Co. v. Laylin, 66 Ohio St. at pages 578, 594, 64 N. E. at pages 564, 565:

"But upon the power to tax privileges and franchises there is no express limitation in the Constitution, but certain limitations upon that power must be implied from other provisions of the Constitution, so as to make the whole instrument harmonious and consistent throughout. The Constitution was established to 'promote our common welfare.' Preamble to the Constitution. Government is instituted for the equal protection and benefit of the people. Section 2 of the Bill of Rights. Private property shall ever be held inviolate, but subservient to the public welfare. Section 19 of the Bill of Rights. These provisions of the Constitution are implied limitations upon the power of taxation of privileges and franchises, and limit such taxation to the reasonable value of the privilege or franchise conferred originally, or to its continued value from year to year. Ashley v. Ryan, 49 Ohio St. 504 [31 N. E. 721], State v. Ferris, 53 Ohio St. 314 [41 N. E. 579, 30 L. R. A. 218], and Hagerty v. State, 55 Ohio St. 613 [45 N. E. 1046], are examples of taxing the privilege or franchise conferred; while Telegraph Co. v. Mayer, 28 Ohio St. 521, and Express Co. v. State, 55 Ohio St. 69 [44 N. E. 506], are examples of taxing the continued value of the existing privilege or franchise from year to year. These limitations prevent confiscation and oppression under the guise of taxation, and the power of such taxation cannot extend beyond what is for the common or public welfare, and the equal protection and benefit of the people; but the ascertaining and fixing of such values rest largely in the General Assembly, but finally in the courts."

An examination of that case as reported, as well as of the original file papers, discloses that no contention was made and no issue tendered that the statute then under consideration imposed a tax beyond the reasonable value of the privilege or franchise originally conferred or its continued value from year to year, nor do any of the cases cited in the above quoted excerpt touch that question. The limitation thus said to be imposed by the state Constitution on the legislative power to tax cannot, however, be safely treated as a dictum, for the reason that it is carried forward into the syllabus, which in Ohio states the law of the case. The court dealt in that case with a general law and its operation on all corporations of given classes throughout the state, and not with its operation on specific financially weak corporations of any one of those classes. It did not consider the same question as is here presented, and we are constrained to believe that it did not mean to hold that the courts as final arbiters may overthrow a law which imposes a tax on privileges and franchises merely because in isolated cases such law imposes a hardship, but that it had reference to a law the effect of whose enforcement is to produce that result generally. This is made clear by the same court in State v. Guilbert, 70 Ohio St. 253, 71 N. E. 638, 1 Ann. Cas. 25, where it is said:

"We are of the opinion that an excise tax which operates uniformly throughout the state and applies equally to all the subjects embraced within its terms cannot be said to deprive any one of the equal protection of the law, or in any manner to violate the Bill of Rights, or any section of the Constitution."

The earlier case of Western Union Telegraph Co. v. Mayer, 28 Ohio St. 521, is also instructive. A law of uniform operation, which imposed an excise tax at a rate equal to that on property on the gross receipts of foreign express and telegraph companies doing business in Ohio, and prohibited, under heavy penalties, any person from acting as agent of or transacting any business for any company that defaulted in the payment of such tax, was alleged to be violative of both the state and the federal Constitution. The tax was a charge on the privilege of such corporations exercising their franchises and powers within the state until the tax, interest, and penalties thereon were fully paid. It was computed on the gross receipts arising manifestly not only from distinctively intrastate business, but from business which began elsewhere and terminated within the state, or had its inception in the state and terminated beyond its limits. Thus reckoned, the amount was 3.34 per cent. of such receipts, but, if restricted as it should have been to the purely intrastate business, it equaled 31.2 per cent. of the total receipts from that source, or 93.6 per cent. of such receipts not absorbed by current expenses. It was charged that the tax was oppressive and unjust in its operation, but the tax was upheld; it being stated in the opinion regarding its provisions that:

"They are the conditions upon which the corporations named in the act are allowed to do business within the state. Whether this tax is warranted by a wise public policy, and whether it is too onerous, are questions for the Legislature and not for the courts. The burden is the price paid for transacting their business within the state. * * * Any regulations imposed on such corporations, not amounting to a regulation of commerce, nor to a tax on the property of the corporation within the state, imposed as a compensation to be paid to the state for the privilege of doing business within its territory, is, we think, within the legislative power of the General Assembly. The unbroken current of judicial authority is in support of such power in the state, and in our opinion public policy demands its exercise."

The court, it is true, was speaking of a law affecting foreign corporations only which could exercise none of their powers or franchises within the state, save through comity, or under legislative consent, and which the court found might have been excluded from the state altogether, with which theory we have nothing to do. But it is also true that it recognized the power to raise the necessary funds to defray the legitimate expenses of government by modes other than an ad valorem system of taxation on all property in the state and also the legislative power to create domestic corporations and prescribe the terms upon which they, as well as foreign corporations, might exercise their franchise. The right to extend the tax to domestic corporations undoubtedly existed, as was later held in the Southern Gum Co. Case, but the Legislature did not see fit to embrace such corporations within the law. It would therefore seem to follow that the language quoted is applicable to all corporations of a given class and that a law which is of uniform operation as to that class is not repugnant to any constitutional provision, state or federal, although it may bear heavily upon some given individual or individuals falling within its terms.

Some assistance is derived from Adler v. Whitbeck, 44 Ohio St. 539, 9 N. E. 672, which arose under a law the authority for whose enactment is based (1) upon the constitutional provision (Schedule, §

18, Constitution of Ohio) that "no license to traffic in intoxicating liquors shall hereafter be granted in this state, but the General Assembly may by law provide against evils resulting therefrom," and (2) the general power of taxation granted in the same organic instrument. The law imposed a tax on the business of trafficking in intoxicating liquors and involved the exercise of both the police power (44 Ohio St. 563, 9 N. E. 672, and McGuire v. State, 42 Ohio St. 532) and the power to tax (44 Ohio St. 562, 568, 9 N. E. 672; Anderson v. Brewster, 44 Ohio St. 583, 9 N. E. 683). It served a double purpose—the restraint of the evils resulting from the liquor traffic, and the creation of a revenue to indemnify the general taxpayer for the increased burden imposed on him by the business. The tax was said to be in the form and nature of a tax upon the business (44 Ohio St. 563, 9 N. E. 672), and in the Southern Gum Co. Case it is affirmatively characterized as an excise tax applied to the liquor traffic on account of the additional burdens imposed on the state. In this respect it is assimilated to the tax here under consideration, whose object is to compensate the state and indemnify the taxpayer for the increased burden resulting from the special inconvenience and expense sustained and the supervisory power exercised by the government over corporate utilities and for the benefit of those who own and operate such. Ashley v. Ryan, 49 Ohio St. 504, 525, 31 N. E. 721; Cincinnati Gaslight & Coke Co. v. State, 18 Ohio St. 238, 243; Baker v. Cincinnati, 11 Ohio St. 534, 543; Southern Gum Co. v. Laylin, 66 Ohio St. 595, 64 N. E. 564; Western Union Telegraph Co. v. Mayer. The contention was made in the Adler Case that the enforced payment of the tax on the business of trafficking in intoxicating liquors would impose on many of small means such financial hardship as to drive them out of business. The court recognized that such would be the consequence, but it did not deem the law invalid on that account (44 Ohio St. 560, 561, 567, 9 N. E. 672), as such result would arise from extraneous circumstances, and not from the law.

Equality in regard to taxation of property is the great idea of the Ohio Constitution. Baker v. Cincinnati, 11 Ohio St. 541. The Legislature, conforming as nearly as may be to the purposes of the framers of the Constitution has intended to reach, for taxation, the property of every citizen, whatever its form may be, which is not by the organic law specifically exempt, to the end that all shall bear their just share of the public burdens. Lewis v. State, 69 Ohio St. 479, 69 N. E. 980; Southern Gum Co. v. Laylin, 66 Ohio St. 593, 64 N. E. 564. See, also, the earlier case, Exchange Bank of Columbus v. Hines, 3 Ohio St. 11, 12. There can be no exemption of property from taxation, unless the right of exemption is clearly expressed. Lander v. Burke, 65 Ohio St. 532, 542, 63 N. E. 69. The estate of an insolvent decedent must contribute, and to the same relative extent as a prosperous enterprise or the estate of a wealthy decedent. Section 2734, R. S.; McNeill v. Hagerty, 51 Ohio St. 255, 265, 37 N. E. 526, 23 L. R. A. 628. The creditors of an insolvent's estate really pay the tax, just as the bondholders and other creditors of the money losing plaintiff, under the rule of equality, in fact must do, if it be required to pay the excise tax charged against it. But absolute equality and uniformity are not attainable under the Ohio

or any other system of taxation. An approximation thereto is all that is practicable. Shotwell v. Moore, 45 Ohio St. 646, 16 N. E. 470; Ashley v. Ryan, 49 Ohio St. 525, 526, 31 N. E. 721. Judge Cooley, in his work on Taxation (3d Ed.) 390, 391, with great force and accuracy, in speaking on this subject, says:

"It cannot be too distinctly borne in mind that any possible system of tax legislation must inevitably produce unequal and unjust results in individual instances; and if inequality in result must defeat the general law, then taxation becomes impossible, and governments must fall back upon arbitrary exactions. But no such impracticable principle is recognized in revenue laws. While equality and justice are constantly to be aimed at, impossibilities are not demanded. Tax legislation must be practical. * * * The Legislature must judge of the general result, and when the law has apportioned the tax, individual hardships must be regarded as among the inconveniences which are incident to regular government. The same necessity that justifies any taxation will justify and sustain any reasonable provisions for giving it effect. The necessity of the state and of reasonable provisions for the security of the individual must be equally considered; the state is no more to be deprived of its revenue, because of individual hardship resulting from general rules, than is the individual to be stripped of his property without law, because in its necessity the state finds it more convenient to take it thus than by regular proceedings. The incidental hardship or inconvenience must be submitted to in either case."

The rule of nonexemption on account of the impracticability of absolute equality of taxation thus recognized by the state court, and so clearly stated by Judge Cooley, was applied and enforced as to an excise tax in Marmet v. State, 45 Ohio St. 69, 12 N. E. 463, where Judge Spear, speaking for the court, held that absolute equality of burdens, whether applied to taxes or other subjects of legislation, is not to be expected in our laws, and that the wisdom of man has not yet devised a system of equalizing burdens so perfect in its application and so thorough in its enforcement as to leave no room for adverse comment or criticism. An excise tax is not a tax on property (State v. Ferris, 53 Ohio St. 326, 41 N. E. 579, 30 L. R. A. 218; Cincinnati Gaslight & Coke Co. v. State, 18 Ohio St. 243; State v. Hipp, 38 Ohio St. 225; Ashley v. Ryan, 49 Ohio St. 504, 525, 31 N. E. 721), but it must, to be valid, operate with equality and uniformity unaffected by any questions as to the solvency or insolvency of the person that is required to pay. That the rule announced in the Marmet Case persists appears from Ashley v. Ryan, 49 Ohio St. 525, 526, 31 N. E. 721, and State v. Ferris. In the Ferris Case, 53 Ohio St., at pages 337, 338, 41 N. E., at page 583, 30 L. R. A. 218, an inheritance tax law providing for an excise tax on the right to receive property was overthrown, because it violated the rule of equality, and did not afford to all upon whom its provisions operated equal protection and benefit. It was said:

"Our constitution requires equality in our tax laws, and also equality in their execution as near as may be. The only exemption allowed, as to taxation of property, is personal property to the amount of $200 to each individual, and certain other property devoted to public or charitable uses. Two hundred dollars in value to each individual is the extent to which the Legislature has the power to exempt personal property from taxation. The constitution must be regarded as consistent with itself throughout, and as section 2, of article 12, permits an exemption from taxation of personal property not exceeding $200 a construction of section 2 of the Bill of Rights

is thereby evinced to the effect that in taxation of subjects other than property, an exemption up to $200 in value would be regarded as for the equal protection and benefit of the people. The exemption must be equally for all, and the rate per cent. must be the same on all estates. There can be no discrimination in favor of the rich or poor. All stand upon an equality under the provisions of the constitution, and it is this equality that is the pride and safeguard of us all."

The above announcement is in harmony with the utterances of the federal courts. In State Railroad Tax Cases, 92 U. S. 575, 23 L. Ed. 663, a law was under consideration which imposed a tax on the franchise, capital stock, business, and profits of the complaining corporations. One of the corporations was insolvent and in the hands of a receiver, its earnings not being sufficient to pay any of the interest on its bonded debt or anything beyond its necessary expenses for operation and repairs. Another of the companies met all of its expenses and interest on a large debt, and declared large dividends. Each owned a large amount of tangible property, and each possessed a franchise which was held, as in Ashley v. Ryan, 49 Ohio St. 525, 31 N. E. 721, to be valuable. They were both said to be alike subject to the law, for the reason that insolvent corporations could no more escape taxation than insolvent individuals, many of whom pay taxes on realty which is mortgaged in excess of the value of all their property, both real and personal, the court adding that no state has ventured to establish the principle of permitting its visible tangible property to escape taxation, relying solely on a tax imposed on the individual on the basis of his estimated wealth in excess of his debts. In speaking of the insolvent company, Mr. Justice Miller said (92 U. S. 606 [23 L. Ed. 663]):

"Concede for the present that the capital stock is sunk and is of no value; concede that the funded debt of the company has at present no market value, or is unsalable—there remains what is valued as worth over $2,600,000 of real and personal property, which, like all other property of individuals or corporations, ought to pay its proportion of the public burdens. There also remains the value of the franchise, which is not destroyed by the circumstance that the road does not pay interest on its debt. Does anybody believe that this debt is of no value—that the holders of it attach no value to this franchise? Are they willing to give up the right to operate the road, to receive freights and fares, to endeavor to make it pay something more than the mere value of the personal property of the track, the depots, the grounds, the rolling stock, and other tangible property? Is it supposed by any one that they intend or will ever sell these separately or apart from the right to use them as a railroad? Why do not the bondholders sell all these things under their mortgage at auction as a man would sell town lots and household furniture, and horses and carriages? The reason is too clear to escape observation. It is because in the case of the railroad there is attached to all this property, and goes with it, a privilege, a right to use it through the whole extent of the richest counties of Illinois, in transporting persons and property, in a manner which adds immensely to its value when considered as so much iron, so much land, and so much personal property. By virtue of this privilege or franchise, this is all aggregated into a unit, well adapted to make money by its use in that way, with a chartered right to use it for that purpose. It is this franchise which the Legislature of Illinois intended to tax, which it had a right to tax; and in taxing it committed no injustice, if it was fairly assessed, though the corporation which holds it may be so utterly bankrupt that it must necessarily pass from it into other hands. In those hands, disembarrassed of its overweight of debt,

who shall say that it is not worth $2,000,000? And who shall say that such is not the real value now of this franchise?"

See, also, Flint v. Stone Tracy Co., 220 U. S. 165, 167, 168, 31 Sup. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312. We think it can be confidently asserted that the Supreme Court of Ohio meant by the language employed in the Southern Gum Company Case that only those excise tax laws, the result of whose operation is generally confiscatory and oppressive, are unconstitutional, and that it did not intend to say that a law, general and uniform in its operation, is invalid, because in exceptional cases it may impose a hardship.

The General Assembly was empowered not only to impose a tax on the gross receipts of the respective plaintiffs, as stated, but also to direct the application of the tax when collected to purposes of general revenue or any other purpose authorized by law (Ashley v. Ryan, 49 Ohio St. 525, 31 N. E. 721; State v. Ferris, 53 Ohio St. 314, 41 N. E. 579, 30 L. R. A. 218; State v. Guilbert, 70 Ohio St. 254, 71 N. E. 636, 1 Ann. Cas. 25). Both of the plaintiffs require governmental protection and the exercise of its supervisory power, and each should in justice bear its fair share of the government's burden. Were either of them to escape taxation on account of its exceptional condition, all other unprofitable corporate enterprises would likewise be relieved, and thus a practical system of taxation would be rendered impossible, and the state be deprived of the power to meet its legitimate expenses.

The claim is made that the law in question is discriminatory in that it (1) does not include all public utilities engaged in business in Ohio, and (2) does not operate uniformly among the utilities named—the tax, for instance, imposed on the gross intrastate earnings of street suburban and interurban railroad companies being but 1.2 per cent. and on express and telegraph companies but 2 per cent. The claim is not supported by the decisions, state or federal. The inheritance tax law under consideration in Hagerty v. State, 55 Ohio St. 613, 45 N. E. 1046, providing for exemptions in the amount of $200, was assailed as discriminatory as among collateral kindred, the tax being imposed upon the value of the property received by some, and not upon that received by others. The law was sustained because the power exercised by the General Assembly in the enactment of the law was legislative and vested by the legislative grant as expressed in the first section of the second article of the Constitution, and, as the right to receive property by inheritance is not guaranteed by the Constitution, that instrument prescribes no limitation upon the power of the General Assembly to designate the persons who may thus receive. The discrimination was based upon and held justified by the fact that there are degrees in collateral kinship. In commenting on that case in State v. Guilbert, the state court approved the language employed in Magoun v. Illinois Trust & Savings Bank, 170 U. S. 283, 18 Sup. Ct. 594, 42 L. Ed. 1037, regarding a similar law, that the states may tax the privilege of taking property by devise or descent, may discriminate between relatives, and between them and strangers, and grant exemptions, and are not precluded from this power by the provisions of the respective

state Constitutions regarding uniformity and equality in taxation. In the Guilbert Case, which also involved an inheritance tax law, the conclusion was reached (and we understand it to be the statement of a rule applicable to excise taxes) that:

"When it is determined, as was determined in the Ferris Case * * * that the tax is an excise tax, and as in the Hagerty Case * * * that the authority to impose the tax is conferred by the general grant of legislative power, then the selection of the subjects on which the tax will be imposed must be within the legislative competency."

Many illustrations may be found in the statutes and reported cases of the rule thus announced. In Marmet v. State an ordinance was upheld imposing a license fee on the owners of all vehicles used upon the streets of Cincinnati excepting farmers marketing the products of their own farms. In the Adler Case the tax on the business of trafficking in liquors was sustained, although it did not bring within its provisions the manufacture of intoxicating liquors or the sale of them by the manufacturer in quantities of one gallon or more at any one time. The line was drawn between the distillery and the brewery on the one hand and the saloon on the other. In Western Union Telegraph Co. v. Mayer, a corporation franchise tax imposed on foreign express and telegraph companies and on no other public utility companies was sustained. Section 2780—17, Rev. St., imposed an excise tax for state purposes only of 1 per cent. per annum upon the gross receipts of steam railroad, street, and interurban railroad, express, telegraph, and telephone companies when engaged in business either wholly or partially within the state, but it did not apply to water transportation companies, unless the whole of their business was done within the state. Under the Nichols Law (section 2778a, R. S.), the property of express, telegraph, and telephone companies was subjected to taxation, the value of such property being determined not merely by the consideration of the visible property, as in the case of all other corporations whose property is taxed, but by the value of the entire capital stock and by such other evidence and rules as would enable the boards fixing such valuation to arrive at the true value in money of the entire property of the companies in the state. A tax levied on such valuation was upheld in State v. Jones, 51 Ohio St. 492, 37 N. E. 945, and Adams Express Co. v. Ohio, 166 U. S. 185, 17 Sup. Ct. 604, 41 L. Ed. 965. Notwithstanding the establishment of the validity of that method of taxation, it was not extended to any other corporations in the state. The General Assembly has seen fit to determine, in the enactment of the law now before us, what occupations or lines of industry are public service enterprises and invested with those attributes which pertain to public interest or public service, and has omitted, for instance, grain elevator companies, warehousing, stockyards, ferries, bridge companies, and innkeepers; but it had a right so to do, and the selection made by it will not be disturbed by the courts unless the determination of the legislative body was clearly arbitrary. The law imposes no burden upon one class of utilities from which others similarly situated are exempt, and, as it does not affect any right of the plaintiffs differently from that of others in the class to which they belong, it is not

obnoxious to the Constitution. Snell v. St. Ry. Co., 60 Ohio St. 269, 54 N. E. 270; State v. Guilbert, 70 Ohio St. 229, 245, 71 N. E. 636, 1 Ann. Cas. 25, 37 Cyc. 746. The same rule is recognized by the federal courts. In Kane v. Erie R. Co., 133 Fed. 681, 685, 67 C. C. A. 653, 657, 68 L. R. A. 788 (C. C. A. 6), in which a provision of an Ohio statute relating to railways was involved, it was said:

"The doctrine is well settled that the General Assembly, in the absence of an applicable prohibition, has power to classify subjects of legislation, conferring rights or imposing burdens on the created classes, according to the views of what is just and expedient and will promote the general welfare, subject only to the limitation that there must be some reasonable ground for the classification made."

The rule so announced has been recognized in Magoun v. Illinois Trust & Savings Bank, supra, and in Home Ins. Co. v. New York, 134 U. S. 594, 10 Sup. Ct. 593, 33 L. Ed. 1025, in each of which a statute was under consideration which involved an excise tax. Other cases in point are Kentucky Railroad Tax Cases, 115 U. S. 321, 6 Sup. Ct. 57, 29 L. Ed. 414; Bell's Gap Railroad Co. v. Pennsylvania, 134 U. S. 232, 10 Sup. Ct. 533, 33 L. Ed. 892; Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 22 Sup. Ct. 431, 46 L. Ed. 679; Brown-Forman Co. v. Kentucky, 217 U. S. 563, 30 Sup. Ct. 578, 54 L. Ed. 883; Southwestern Oil Co. v. Texas, 217 U. S. 114, 30 Sup. Ct. 496, 54 L. Ed. 688; Adams Express Co. v. Ohio, 165 U. S. 194, 228, 17 Sup. Ct. 305, 41 L. Ed. 683. The law is well expressed in Bell's Gap Railroad Co. v. Pennsylvania, 134 U. S. 237, 10 Sup. Ct. 535, 33 L. Ed. 892, where it is said:

"The provision in the fourteenth amendment that no state shall deny to any person within its jurisdiction the equal protection of the laws was not intended to prevent a state from adjusting its system of taxation in all proper and reasonable ways. It may, if it chooses, exempt certain classes of property from any taxation at all, such as churches, libraries and the property of charitable institutions. It may impose different specific taxes upon different trades and professions, and may vary the rates of excise upon various products; it may tax real estate and personal property in a different manner; it may tax visible property only, and not tax securities for payment of money; it may allow deductions for indebtedness, or not allow them. All such regulations, and those of like character, so long as they proceed within reasonable limits and general usage, are within the discretion of the state Legislature, or the people of the state in framing their Constitution."

[3] In view of what has heretofore been said and the authorities cited, it is clear that there is no merit in the contention that, because certain utilities of a given class pay one rate of tax and others of another class a different rate, the law is wanting in uniformity of operation.

Another insistence is that the act, as applied to railroads, lays a burden on interstate commerce. The tax by express provision is levied on gross intrastate earnings only. Those derived wholly from interstate business and business done for the federal government are specifically excluded in computing the amount to be paid. The rule announced in Ratterman v. Western Union Telegraph Co., 127 U. S. 424, 425, 8 Sup. Ct. 1127, 32 L. Ed. 229, is that where the subjects of taxation can be separated, so that that which arises from interstate commerce

can be distinguished from that which arises from commerce wholly within the state, the state will be permitted to collect that arising upon the latter. As the gross intrastate earnings can be readily separated from all others, the law is not open to the objection urged. Ratterman v. Express Co., 49 Ohio St. 618, 32 N. E. 754; Express Co. v. State, 55 Ohio St. 69, 81, 44 N. E. 506; Western Union Telegraph Co. v. Kansas, 216 U. S. 1, 31, 32, 30 Sup. Ct. 190, 54 L. Ed. 355; Kehrer v. Stewart, 197 U. S. 60, 67, 25 Sup. Ct. 403, 49 L. Ed. 663.

[4] The further charge is made that, inasmuch as plaintiffs each pay a property tax, the tax provided by the act in question is not permissible, in that it denies them the equal protection of the law by subjecting them to double taxation. This cannot be true, because the exaction of 4 per cent. of the gross intrastate earnings is not a property tax, but is an excise tax, the amount of which is fixed and measured by the amount of such earnings. Double taxation in a legal sense does not exist, unless the double tax is levied upon the same object within the same jurisdiction. Bradley v. Bauder, 36 Ohio St. 28, 35, 38 Am. Rep. 547. The plaintiffs pay but one tax on property, and another as an excise tax. The taxation, therefore, is not double. Southern Gum Co. v. Laylin, 66 Ohio St. 596, 64 N. E. 564.

The act is also said to be unconstitutional, in that it seeks to prevent judicial inquiry into its constitutionality and enforce obedience to its terms and the administrative acts thereunder, irrespective of their validity. To sustain this claim, allusion is made to the provision for the recovery of a 15 per cent. penalty on unpaid taxes (section 103), to the power to cancel the articles of incorporation of a delinquent corporation (section 120), to the penalty imposed on any one who shall exercise or attempt to exercise any powers, privileges, or franchises under the articles of incorporation after the same are canceled (section 120), to the power to enjoin the transaction of any business by any delinquent public utility (section 123), to each day's willful failure to observe and comply with any order or direction of the Tax Commission or to perform any duty enjoined by law which the Tax Commission is authorized to administer, as constituting a separate and distinct offense (section 158), and to the provision that the holding of any section or part thereof void and ineffective shall not affect any other section or part thereof (section 160). We are not concerned with the validity or operation of any of such sections, for the reason that the pleadings tender no issue regarding them. Moreover, the penalties are clearly a separate part of the act, and, whether collectible or not, may be determined in a case involving an attempt to enforce them. Flint v. Stone Tracy Co., 220 U. S. 177, 31 Sup. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312; Willcox v. Consolidated Gas Co., 212 U. S. 53, 54, 29 Sup. Ct. 192, 53 L. Ed. 382, 15 Ann. Cas. 1034.

We have noticed such objections made to the constitutionality of the law, as it is deemed necessary to consider. We do not find the statute to be obnoxious to either the state or the federal Constitution.

It follows that the motion for an interlocutory injunction in each case must be denied. However, the questions involved are of such importance that we assume that a review of our conclusions will be

desired by the plaintiffs, pursuant to the special provision found in section 266, Judicial Code (Act of March 3, 1911, c. 231, 36 Stat. 1162 [U. S. Comp. St. Supp. 1911, p. 236]).

We have accordingly concluded that the restraining orders heretofore granted shall be continued until an opportunity has been given for the plaintiffs to secure a review, and subject to conditions which will be prescribed in the order to be entered.

That the right of appeal directly to the Supreme Court from our decision may not be embarrassed, we refrain at the present time from passing upon the demurrers.