## Philadelphia and Reading Railroad Company *versus* Commonwealth.

The fact that a railroad corporation is in the hands of receivers, appointed by a decree of the United States court, is no hindrance to the settlement of an account against the corporation, in its name alone, for tax on gross receipts due the Commonwealth under the Act of June 7th 1879.

May 31st 1883.     Before GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.     MERCUR, C. J., and PAXSON, J., absent.

ERROR to the Court of Common Pleas of *Dauphin county :* Of May Term 1883, No. 32.

This was, in the Court below, an appeal by the Philadel-

[Philadelphia, &c. R. R. Co. v. Commonwealth.]

phia & Reading Railroad Company, from a settlement for tax on gross receipts, for the six months ending June 30th 1882, made against said corporation by the accounting officers of the Commonwealth, under the Act of June 7th 1879 (P. L. 112, § 7).

The case was by agreement, tried by the Court without a jury, under the provisions of the Act of April 22d 1874 (P. L. 109).

The findings of fact and conclusions of law by the court (SIMONTON, P. J.), were as follows:

By a decree of the Circuit Court of the United States, in and for the Eastern District of Pennsylvania, rendered May 24th 1880, Edwin M. Lewis, Franklin B. Gowen, and Stephen A. Caldwell were appointed receivers of said corporation defendant, and of all its franchises, powers, privileges, and property real and personal, with (inter alia) directions and authority to run and operate the railroads and other works of said corporation, and to exercise its authority and franchises, and to pay all rents and taxes due and growing due by and from it; said receivers duly qualified and entered upon their duties as such and were in possession of and exercising said franchises and privileges, and operating said railroad and works, all the time during which the gross receipts taxed in said settlement were earned and received, and all of said gross receipts were paid to said receivers; said decree contained also a clause enjoining said corporation, defendant, in this case, from in any way interfering with said receivers in the discharge of their duties as such.

A report was made from the office of said receivers, July 25th 1882, to the Auditor-General of Pennsylvania, verified by the oath of the assistant treasurer of said receivers, who was at the same time assistant treasurer of the corporation defendant, stating that "the gross receipts of said receivers, which if received by the company would have been taxable," were, during said six months, $8,592,872.82.

A statement was indorsed in said report which set forth, after reciting the decree of court and possession of the receivers, as above recited, that "the company was not, during the period covered by the report, engaged in any business from which it derived any pecuniary receipts whatever," and that ever since May 24th 1880, "all receipts which otherwise would have inured to the company have been paid to and disposed of by the receivers;" that "the company can not, therefore, return any receipts for taxation," and protesting that the receipts of receivers are "not liable to taxation under the said Act" of June 7th 1879, "either as against the company or as against the receivers."

8 OUTERBRIDGE.—6

This report was made the basis of the settlement appealed from in this case.

CONCLUSIONS OF LAW.—The three first specifications of objections to the settlement contained in the appeal, consist substantially of a restatement of the facts embodied in the report, as set forth above, and it is contended in the argument contained in the brief of defendant that the necessary legal conclusion from these facts is that defendant is not liable to any tax on gross receipts for the period included in said report; that the Act of 1879 was not intended to include and does not include within its provisions the case of a corporation in the hands of receivers, as the defendant is shown by the facts to be. Can this proposition be sustained?

For the purposes of this case, the Act of June 7th 1879, may be read as follows: "Every railroad company . . . now or hereafter incorporated or organized by or under any law of this Commonwealth, . . . and owning, operating, or leasing to or from another corporation, company, or limited partnership, any railroad, canal, . . or other device for the transportation of freight or passengers, . . . shall pay to the state treasurer, for the use of the commonwealth, a tax of eight-tenths of one per centum upon the gross receipts of said company for tolls or transportation, telegraph, and express business;" or condensing still further, "every railroad company . . . owning any railroad, canal, . . . or other device for the transportation of freight or passengers, . . . shall pay a tax . . . upon the gross receipts of said company."

Waiving as unnecessary any discussion of the question of the precise status of a railroad corporation when in the hands of receivers, by virtue of a decree such as is shown in this case, we may safely assume that the defendant is still the owner of all the franchises, privileges, and property real and personal, which were by the decree put into the hands of the receivers, and which have not since been sold : that it therefore owns railroads, canals, and other devices for the transportation of freight and passengers ; and hence, that "the gross receipts of said company" are taxable if there be any such gross receipts within the fair sense and meaning of the law.

It is argued by the able and ingenious counsel of the defendant, that the taxability or otherwise of the gross receipts depends upon the relation of the taxing Act of those into whose hands they come ; in other words, that the expression "gross receipts of said company" means the gross amount received by said company, and that, as the company, as such, received nothing, it had no gross receipts. We do not so understand the Act. As we construe it, "gross receipts" is equivalent to "gross increase" or "gross earnings," and we think that their

origin and ownership, rather than the hands into which they come, must be considered in determining the question whether they are taxable or not.

How then did these gross receipts accrue, and to whom did they really belong? The franchise and privileges, the railroads and canals, the property of every kind, real and personal, though exercised, operated, and used by the receivers, were owned by the corporation defendant. It was, then, the exercise, operation, and use of the property of defendant that produced the gross receipts, and these went into the hands of the receivers, simply because they were receivers of the property and assets of the defendant. Their appointment gave them—so far as this case is concerned—no right to take any gross receipts that did not belong to defendant. They were acting for it, and at its expense, and not for themselves, and the product of the exercise and use of its franchises and property belonged to it as much as the franchises and property themselves. The only difference is that had the receivers not been appointed, the officers of the defendant would have been free to apply the receipts to such of its uses as they thought best, whereas the receivers will apply them to such of its uses as the court may direct. In either case they are used for the benefit of the defendant. This view does not rest upon any theory of the existence of the relation of principal and agent between defendant and the receivers; it is involved in a simple statement of the actual facts of the case.

We are, therefore, unable to see how it can be said that "there were no gross receipts of said company" during the period for which tax is claimed, within the fair meaning and intent of the taxing Act; and without considering it needful to discuss the matter further, we decide that the gross receipts reported to the Auditor-General as hereinabove stated, were properly taxed in the settlements of accounts appealed from. But it is said—and this is the fourth and last specification—that if the receipts were taxable, the account should have been settled against the receivers, and not against the company. We consider this a merely technical objection. We are not called upon to express any opinion as to whether the settlement would be good if made against the receivers; we consider it binding as made against the company. The tax was due from it, the report was made by it, as is expressly stated in the memorandum included in it. It is verified by the assistant treasurer of the company, who is also assistant treasurer of the receivers, and one of the receivers is, and was during the period covered by the report and the settlement, president of the company. We may therefore fairly infer, and there is no suggestion to the contrary, that both the receivers and the company had due notice of the

settlement. The company has appealed, and the receivers have not asked to be made parties to the proceeding. No injustice can be done the company by holding the settlement good in this form, nor can the possession of the receivers be disturbed by virtue of a judgment rendered against the company : Robinson *v.* Atlantic and Great Western Railway Company, 16 P. P. S. 160. See also Commonwealth *v.* Runk, 2 Casey 235.

Judgment must therefore be rendered in favor of the Commonwealth for tax, interest, and commission.

| | |
|---|---:|
| Amount of tax, in account . . . | $68,742 98 |
| Interest, October 10th 1882, to January 22d 1883 . . . . . | 2,337 26 |
| Attorney-General's commission . . | 3,437 14 |
| Total . . . . . | $74,517 38 |

Judgment is directed to be entered against defendant in favor of the Commonwealth for said total, unless exceptions are filed according to law.

The defendant filed exceptions to the decision of the court in not affirming the matters set forth in the specifications of objection to the account; to the conclusions of law and to the judgment. The court overruled the exceptions, and judgment was entered as above; whereupon the defendant took this writ of error, assigning for error the dismissal of the exceptions and the judgment.

*James E. Gowen* (with him *W. B. Lamberton* and *D. Mumma*), for the plaintiff in error.—Gross receipts, per se, are not taxable. The corporation did not, and could not, receive the gross receipts. The accounting officers declined to state the account against the receivers of the corporation who did receive them. The receivers are accountable not to the corporation, but to the United States Court which appointed them, and for the benefit of the mortgagees in the trust mortgage. The corporation is no more liable for the tax than if the United States Government had taken manual occupation of our road and run it, nor than a lessor of a railroad is liable instead of a lessee. The question of origin and ownership of the property has nothing to do with the question of liability to tax for a particular half year. The receivers spend all they get, and more, in operating the road, issuing certificates, &c. The income-tax was never assessed against an assignor for benefit of creditors on the receipts of the assignee. No relation of principal and agent, or trustee and cestui que trust, exists between the corporation and the receivers. If, however, the receivers were trustees, tax should be assessed against the trustees, not he cestui que trust. If this railroad had passed into the hands of

[Philadelphia, &c. R. R. Co. v. Commonwealth.]

its mortgagees who received the income, the Commonwealth would not claim, and lose, tax against the insolvent corporation. There is no form of law by which a tax due by A. can be collected by an account settled, or suit brought against B. The authorities cited on the other side relate to statutory receivers of insolvent corporations, or receivers of a partnership, and not to receivers appointed by a court on a mortgagee's bill, who act for the plaintiff. As to the lien, under § 14 of the Act of 1879, that Act was passed long after the date of the mortgage under which the receivers were appointed, hence the statutory lien is subsequent to the receiver's lien. The case being a tax case, the Act should be strictly construed.

*Robert Snodgrass*, deputy attorney-general (with him *Lewis, C. Cassidy*, attorney-general), for the Commonwealth.— The tax on gross receipts is a tax on the franchise of the corporation, measured by the receipts: Philadelphia Contribution-ship, &c. v. Commonwealth, 2 Out. 48. The object of the Act of 1879 is to reach that franchise, no matter by whose hands the receipts are taken, whether the corporation itself, or lessees, mortgagees, or receivers. The receivers merely stand in the place of the management, exercising the corporation's franchise under the direction of the United States court; they represent the interests not of the mortgagees only, but of all parties, and take the property of the corporation by the title of that corporation, and subject to all its legal liabilities: High on Receivers, § 397, and notes. We cannot seize the corporation property in the hands of the receivers, without leave from the United States court, but the judgment may be so moulded that it shall be paid only out of the proper money of the corporation due to it by the receivers: Commonwealth v. Runk, 2 Casey 235.

Mr. Justice Gordon delivered the opinion of the court, October 1st 1883.

That these gross receipts were taxable under and by force of the Act of 1879, there can be no doubt, and if they were not to be assessed against the Philadelphia and Reading Railroad Company we know not who was to account for them.

If the owner of this property was not to bear the burden of the public charges against it, we are at a loss to determine upon whom they should fall. The receivers, the appointees of the United States Circuit Court, were owners neither of these receipts nor of the property whence they were derived, and they were certainly not personally accountable for the taxes upon it. The decree of the Circuit Court made no change in the title to this property, and the receivers, Messrs. Lewis, Gowen

and Caldwell, had nothing but a qualified right to the receipts which, by force of that decree, came into their possession. They had the right to receive them, but only for the purpose of applying them to the debts of the company; an application which was as much for the company's use as was the payment of the wages of the employees who maintained and operated the road-bed and engines.

If then, this was the defendant's property, and was used for the defendant's benefit, we cannot see to whom else the taxes could properly have been charged. At best the defendant's controversy is but technical, for had the account been settled against the receivers, cui bono? The money to pay the taxes must, at all events, come from the purse of the company. In either event the Commonwealth was entitled to her taxes, and that the owner of the property taxed should be made to pay the charges upon it is a conclusion that is but just and reasonable.

The judgment is affirmed.