### In re KELLER.

(District Court, N. D. Iowa, C. D.   June 5, 1901.)

BANKRUPTCY—SALE OF PROPERTY BY TRUSTEE—LIABILITY FOR TAXES.

An adjudication in bankruptcy was made in December. February 1st following, a stock of goods owned by the bankrupt was assessed for taxation. The stock was subsequently in the same month sold, by order of the referee, in bulk, at public auction, "free and clear from all liens." The statutes of the state provided that personal property should be assessed each year in the name of the owner thereof on the 1st day of January, and that taxes on stocks of goods should be and continue a lien thereon in the hands of the owner or any purchaser in bulk; but the taxes were not leviable until September, nor payable until the succeeding January. *Held*, that such lien was not affected by the bankruptcy proceedings or the sale of the goods therein, and that under the contract of sale it was the duty of the trustee, for the protection of the purchaser, to provide for the payment of the taxes to be subsequently levied thereon from the bankrupt estate.

In Bankruptcy. On exceptions to ruling of referee.

Wesley Martin, for trustee.

A. N. Boeye, for Hamilton county.

SHIRAS, District Judge. From the facts certified to by the referee, it appears that Almon D. Keller, a resident of Webster City,

Iowa, was adjudged a bankrupt on the 24th day of December, 1900, and, on the 7th day of January following, C. B. Stoddard was appointed trustee of his estate, which mainly consisted of a stock of merchandise appraised at the sum of $10,548.46. On the 31st day of January the referee, after due notice to creditors, entered an order directing the sale of the stock of goods at public auction free and clear from all liens, which sale was advertised to take place on February 12th. The trustee refused to list the property for taxation, and on the 1st day of February the assessor of Webster City, Iowa, assessed said stock of goods, placing the assessable value at $4,000. The sale took place, as advertised, on the 12th of February, and the Hamilton County State Bank purchased the goods for the sum of $10,975. On the 18th day of February the trustee filed an application before the referee, setting forth that Hamilton county and Webster City, through their officials, were claiming that the taxes to be assessed for the year 1901 were a lien upon the goods sold, and a charge against the proceeds in the hands of the trustee, and asking a hearing and decision upon the claims thus asserted. On the 11th of March a hearing was had before the referee,—the trustee, Hamil-. ton county, and Webster City appearing by counsel; and after due consideration the referee held that, under the terms of the sale of the property, the purchaser took the same free and clear of all liens, and therefore the Hamilton County State Bank held the property free from any charge or lien for the taxes for the year 1901, and, furthermore, that neither the trustee nor the estate in his hands, being the proceeds received from the sale of the goods, was liable to any lien or charge for the taxes of 1901, to which rulings exceptions were taken on behalf of Hamilton county and Webster City, and the matter has been submitted to the court for its consideration.

The contention on behalf of the trustee is that the taxes for the current year will not be levied until in September, and will not become payable until January 1, 1902, and therefore they do not come within the true meaning of section 64 of the bankrupt act, which enacts that "the court shall order the trustee to pay all taxes legally due and owing by the bankrupt to the United States, state, county, district or municipality in advance of the payment of dividends to creditors, * * *" and that this section is the only one which confers any authority on the trustee to pay taxes out of the proceeds of the estate of the bankrupt. There is nothing in the language or purpose of the bankrupt act which justifies the holding that claims for taxes due the state, county, or city are not to be recognized and properly protected by the trustee. Section 64, already cited, makes it the duty of the trustee to pay all taxes legally due and owing in preference to the claims of creditors; and while it may be true, as is claimed by counsel for the trustee, that this section refers only to taxes that have been levied and are due and payable, in the complete sense of these words, yet the enactment of the section shows that congress recognized claims for taxes to be so highly meritorious that preference in payment over ordinary debts is granted thereto in the distribution of bankrupt estates. By the provisions of section 1350 of the Code of Iowa it is declared that "property shall be taxed each

year and personal property shall be listed and assessed each year in the name of the owner thereof on the first day of January"; and in section 1400 it is enacted that "taxes upon stocks of goods or merchandise shall be a lien thereon and shall continue a lien thereon when sold in bulk and may be collected from the owner, purchaser or vendee." Under the provision of these sections, if the proceedings in bankruptcy had not intervened, and if Keller had sold the stock in bulk to the Hamilton County State Bank on the 12th of February, the assessor would have assessed the property in the name of Keller, he being the owner on January 1st; and the taxes, when finally levied, would have been a lien on the goods, and would also have been collectible from the bank, as the purchaser of the stock in bulk. The fact that the sale was made through the medium of the bankruptcy proceedings cannot change the actual situation. The trustee succeeded to the title of the bankrupt, and in his capacity of trustee he sold the stock in bulk to the bank, but such sale would not necessarily defeat the right to collect the taxes for the current year by enforcing the lien on the goods. If the sale made by the trustee had transferred the title, without the provision that the purchaser was to take the title free and clear of all liens, then what would prevent the city and county from enforcing the lien for the taxes for the current year against the property taxed, or the purchaser thereof in bulk, under the provisions of section 1400? If, under such circumstances, the purchaser is held to take the property free from all liability for taxes for the current year, it would be upon the theory that the title acquired by the trustee in bankruptcy passes to him freed from all liability for such taxes, which I cannot conceive to be the intent of the act. If it be held that upon the appointment of the trustee, on January 7th, the title of the stock of goods vested in him as of the date of the adjudication, which was December 24, 1900, then the trustee was the owner of the goods on the 1st day of January, in such sense that, when called upon by the assessor, he should have listed the same for taxation, or, if that course was not followed, then the stock should have been listed in the name of Keller. Having been listed for taxation, a subsequent sale in bulk would not have freed the stock from liability for the taxes for the current year, unless the sale had been made under circumstances which, in equity, transferred the tax claim to the proceeds of the property. The findings of fact certified up by the referee show that, although the trustee refused to list the property for taxation, the assessor listed the same, and placed the taxable value thereof at $4,000, this being done on February 1st; and, therefore, when the taxes are levied in September next, the county and city can enforce payment thereof from the purchaser in bulk, to wit, the Hamilton County State Bank. Under these circumstances, what are the rights of the bank, under the terms of the sale at which the bank became the purchaser, as against the trustee? The referee finds that it was declared, as one of the terms of the sale, that the property was to be sold discharged from all liens, or, in other words, the sale was made by the trustee upon the theory that the purchaser would take the property free and clear from all claims against the same, and the proceeds of the sale

would be subject to all claims which could have been enforced against the stock, had that remained in his possession unsold; and the referee therefore holds that the city and county cannot enforce the payment of the taxes for the current year against the bank. The bank, having been induced to become a purchaser of the stock upon the representation of the trustee that the property would pass to it free and clear of all claims, is in position to insist that the trustee must pay out of the proceeds of the sale the taxes for the current year, which, if not paid, will in due course of time become a perfected lien upon the property as of a date preceding the day of sale, to wit, February 12, 1901. The equity in favor of the bank does not grow out of the provisions of section 64 of the bankrupt act, which provides for the payment of all taxes legally due and payable, but is based upon the fact that the property, being in the custody of the court of bankruptcy, was ordered to be sold at public auction, free and clear from all liens; and the court of bankruptcy has construed the effect of this sale to be such that the property passed to the purchasing bank, free from all charges or liability for the taxes of the current year. Assuming this to be the situation, it follows that the claim for taxes, which originally could have been enforced against the stock of goods and also against the purchasers in bulk, must now be held to exist against the proceeds of the sale; for, unless it be so held, the county and city will be deprived of the taxes for the current year unless the same are collected from the stock in the hands of the bank. There is nothing appearing in the case that justifies the holding that the county and city are not entitled to the taxes for the year 1901; and, on the other hand, if the county and city are remitted to their rights against the stock sold to the bank for the collection of the taxes, then the contract of sale, to wit, that the property should pass free and clear, would not be carried out. If when the sale was advertised it had been stated that the purchaser would take the property free and clear from all liens or charges, except for the taxes to be assessed for the current year, the present difficulty would not have arisen; but this was not done, and the equities of the bank are to be determined according to the provisions of the sale as ordered and as construed by the referee, acting as the court in charge of the property. As this court has reached the conclusion that the county and city can rightfully enforce the payment of the taxes for the current year against the property sold in bulk to the bank, it follows that equitably the bank has the right to demand payment for the taxes out of the proceeds of the sale; for, unless this be done, the court ordering the sale would not perform the terms of the sale, which were that the purchaser would take the property free and clear from existing claims. The conclusion reached, therefore, is that the trustee should pay the county and city taxes for the year 1901 assessable on the stock of goods sold to the bank. To prevent delay in the final distribution of the estate, the trustee should endeavor to arrange with the county and city officials for the payment of an amount which will represent the taxes for the year, or, if that cannot be done, then probably an arrangement can be made with the purchasing bank whereby a given amount to cover claims for taxes

can be paid to the bank, and thereupon a release to the trustee from all claim by reason of the unpaid taxes can be executed by the bank; and the trustee can then distribute the estate, leaving the county and city free to enforce payment of the taxes against the stock and the bank, as the purchaser thereof, under the provisions of the state statutes. It will be understood, however, that these suggestions with respect to the mode of settling the claims for taxes are not rulings, but merely suggestions as to possible methods of settlement; the referee and trustee being at liberty to pursue such course as may seem best after consultation with the parties in interest.