STATE OF OHIO v. HARRIS.

SAME v. CLUM.

SAME v. FERRIS.

(Circuit Court of Appeals, Sixth Circuit.   January 4, 1916.)

Nos. 2737, 2739, 2816.

1. TAXATION ☞117—CORPORATE FRANCHISE—INSOLVENCY AND RECEIVER.
     It is not the intent of the Ohio statute to exact a franchise tax in re-
     spect of an insolvent domestic corporation, not shown to have a surplus
     of assets in excess of its indebtedness, where the corporation has either
     been adjudged a bankrupt or its assets have been placed in the hands of a
     receiver (who, though empowered to continue the business, is not shown
     or claimed to have done so except only as this may have been involved
     in the collection of claims and discharge of debts), and where the tax
     claimed is for a time subsequent to the tax year in which the adjudication
     or appointment took place.
     [Ed. Note.—For other cases, see Taxation, Cent. Dig. § 214; Dec. Dig.
     ☞117.]

2. TAXATION ☞117—CORPORATE FRANCHISE—INSOLVENCY AND RECEIVER.
     While the corporations here involved fall nominally within the class
     to which the franchise fee or tax (section 5495, General Code of Ohio)
     applies, still, in view of the status of each, they are not corporations in-
     tended by the statute to be taxed, since the paramount purpose of the
     statute is to tax corporations which are in the exercise of their fran-
     chises.
     [Ed. Note.—For other cases, see Taxation, Cent. Dig. § 214; Dec. Dig.
     ☞117.]

3. TAXATION ☞58—INTENTION TO TAX—STRICT CONSTRUCTION.
     The intention to tax must be expressed by the Legislature in distinct and
     unambiguous language, and the language employed cannot be extended by
     implication beyond its clear import, and well-founded doubts engendered
     in attempting to apply the statute must be resolved in favor of the tax-
     payer.
     [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 134, 135; Dec.
     Dig. ☞58.]

4. TAXATION ☞117—CORPORATE FRANCHISE—LIEN—INSOLVENCY.
     Section 5506, General Code Ohio, providing that the franchise tax shall
     be the first and best lien on all property of the corporation, whether such
     property is employed by the corporation in the prosecution of its business
     or is in the hands of an assignee, trustee, or receiver for the benefit of
     creditors, does not signify that the lien is a source of power to tax; the
     lien affords simply security for collecting a tax otherwise specifically au-
     thorized and assessed.
     [Ed. Note.—For other cases, see Taxation, Cent. Dig. § 214; Dec. Dig.
     ☞117.]

5. TAXATION ☞117—CORPORATE FRANCHISE—INSOLVENCY AND RECEIVER.
     Where a corporation is in process of winding up by proceedings in as-
     signment or bankruptcy as provided in section 11975, General Code Ohio,
     omission to file the certificate called for by section 11974, Id., does not have
     the effect of sanctioning the exaction of the franchise tax, where the state
     officials charged with its collection have actual knowledge of the condi-
     tion of the corporation.
     [Ed. Note.—For other cases, see Taxation, Cent. Dig. § 214; Dec. Dig.
     ☞117.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. TAXATION ☞117—CORPORATE FRANCHISE—INSOLVENCY AND RECEIVER.

Where assets of an insolvent corporation are in the custody of the law for the sole purpose of being converted into money and applied towards payment of debts, and such seizure is prior to the tax year in question, it is immaterial whether title is in a trustee or the property is merely in the custody of a receiver, since the effect on the corporation in both cases is the same, and the question of title is not the test of right to recover the tax, since the imposition of a tax on franchises necessarily implies a privilege to exercise them; that is, the franchise to exist and the right to exercise the powers contemplated by the charter as well.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 214; Dec. Dig. ☞117.]

Appeals from the District Court of the United States for the Eastern Division of the Northern District of Ohio; John M. Clarke, Judge.

Appeal from the District Court of the United States for the Western Division of the Southern District of Ohio; Howard C. Hollister, Judge.

Bankruptcy proceedings against the Smokeless Heat & Power Company (George B. Harris, trustee) and the Georgian Bay Company (Alfred Clum, trustee), and action for a receivership of the Dominion Coal Company (Aaron A. Ferris, receiver), in each of which the State of Ohio intervened. From decrees granting insufficient relief, the State of Ohio appeals, and also files a petition to revise the decree in the first proceeding. Petition to revise dismissed, and decrees affirmed on appeal.

These appeals are from decrees entered in three intervention suits brought by the state of Ohio. The first and second interventions were commenced in bankruptcy proceedings, one in the matter of the Smokeless Heat & Power Company, bankrupt, and the other in that of the Georgian Bay Company, bankrupt; and the third was begun in an equity suit commenced by George H. Keeney against the Dominion Coal Company, in which an order was at the same time entered appointing a receiver and placing the property of defendant in possession of the receiver. The companies mentioned had been organized as Ohio corporations, though for different purposes; and at the commencement of the bankruptcy proceedings and the suit involving receivership, each company was in possession and control of its property and business. The object of the interventions was to recover certain franchise fees or taxes which were claimed to have accrued against the respective companies and ripened into a lien upon the corporate property; and, moreover, enforcement of the alleged liens was asked through orders, one against each of the trustees in bankruptcy and another against the receiver, requiring the officer to pay the tax out of the funds of the estate in his hands.

The first intervention concerned the tax for 1910, 1911, and 1912; and the trustee was ordered to pay, subject to the cost of administration, the tax that accrued in 1910, with interest, though without penalty. The second intervention related to the tax for 1904 to 1913, inclusive; and recovery was granted, in the form of preferred tax claims, for 1905 to 1910, inclusive, with interest, but without penalty. The third intervention had reference to the tax for 1911, 1912, and 1913; and the receiver was ordered to pay as a preferred claim, out of the funds in his possession, the tax that accrued in the year 1911, without penalty. The adjudication in bankruptcy involved in the first intervention took place November 23, 1910, and in the second on the 9th of that month; but the appointment of the receiver did not occur until November 3, 1911. It will thus be seen that the recoveries allowed were for such unpaid franchise taxes as had accrued before, and also in, the year (a) of the adjudications in bankruptcy and (b) of the appointment of the receiver,

and that the recoveries denied related to each of the subsequent years, when the trustees and the receiver, not the corporations, were in possession and control of the corporate assets and engaged exclusively in applying them toward payment of the corporate debts.

The state appeals from the decree, and also files petition to revise in matter of law, in the first of the interventions, but simply appeals from the decrees in the second and third. The assignments of error, however, are confined to the denials of recovery for the years subsequent to those in which the adjudications in bankruptcy and the appointment of the receiver occurred, and so do not concern the recoveries allowed. The appeals were heard together in this court, but nothing was then said by counsel, and nothing appears in the briefs, in regard to remedy. It is therefore assumed that each decree was open to the appeal taken, and hence the petition to revise the order involved in the first decree must, in accordance with the settled practice, be dismissed.

C. D. Laylin, of Columbus, Ohio, and C. F. Hornberger, of Cincinnati, Ohio, for the State of Ohio.

W. L. R. Flory, of Cleveland, Ohio, for appellee Harris.

G. B. Marty, of Cleveland, Ohio, for appellee Clum.

A. A. Ferris, of Cincinnati, Ohio, for appellee Ferris.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge (after stating the facts as above). [1] Is it the intent of the Ohio statute to exact a franchise tax in respect of an insolvent domestic corporation, where the corporation has either been adjudged a bankrupt or its assets have been placed in the hands of a receiver (who, though empowered to continue the business, such as that of mining and selling coal, is not shown or claimed to have continued the business except only so far as this may have been involved in his admitted collection of claims and discharge of debts of the corporation), and where the tax claimed is for a time subsequent to the tax year in which such adjudication or appointment took place?

The facts deducible from the present records do not call for decision upon some features of the arguments of counsel. For example, whether the tax would be recoverable for such a period: (1) If it were made to appear in respect of a corporation, which is in bankruptcy or whose assets are in the hands of a receiver, that there will be a surplus of assets after discharge of the indebtedness; or (2) if a receivership were created with authority in the receiver to continue the business, and the business were in fact conducted by him during a period for which the tax is not paid. No such case is before us, but simply stating these instances serves measurably to clarify the present situation. The instant cases have to do with corporate assets which had been taken from the corporations in virtue of judicial orders, and at times when the corporations were admittedly insolvent; and, further, it is to be remembered that the present claims for taxes are not for the years in which any of the corporate assets were seized, but are for years subsequent to the seizures, and while the assets were in the custody of the law for the sole purpose of being converted into money and applied toward payment of the corporate debts.

[2] Concededly, these corporations fall nominally within the class to which the franchise fee or tax claimed in terms applies, for they were

organized under the laws of Ohio "for profit." 3 P. & A. O. G. C. § 5495. Before giving attention to the nature of the fee as it has been judicially defined, reference will be made to its statutory sanction. The amount is computed according to a prescribed standard. Domestic corporations are required to file reports annually with the state tax commission in either May or June; and every report must be made under oath by one of the officials of the corporation (sections 5495, 5496, Id.), and must show, among other facts not now important, the issued and outstanding capital stock of the company (section 5497, Id.). The tax commission is then required to determine, and certify to the auditor of state, the amount of stock outstanding. The auditor must by August 15th "charge for collection, * * * from such corporation, a fee of three-twentieths of one per cent." upon the amount of stock so certified to him; the fee is payable by the 1st of the following October (section 5498, Id.). It will be observed that the fee is thus made an annual charge, though the statute does not specify the year for which the charge is made. Judge Clarke held, in the present bankruptcy interventions, that this period is the current calendar year, while Referee Doyle held in Bank v. Aultman, 12 Am. Bank. R. 13 (same case, 14 O. F. D. 298), that it is "the year ensuing after the filing of the annual report." It is not necessary to determine which of these periods is the correct one, for it must be one or the other, and, in view of the tax recoveries allowed below, each of the corporations lost possession and control of its property within a tax-paid period; but we are disposed to believe Judge Clarke's conclusion is right.

The particular portion of the Ohio legislation which, as we have seen, authorizes the charge to be made, calls it a "fee," and this was true of the original act, commonly known as the Willis Law. 95 Ohio Laws, 124, 125. The evident reason for adopting this name, when it is considered in connection with the mode selected for computing the amount to be exacted, was to distinguish the charge from a tax on property, and so to avoid the limitation of the Ohio Constitution which requires "all real or personal property" to be taxed "according to its true value in money." Article 12, § 2, Const. of 1851 and 1912. Franchises have never been regarded as property, within the meaning of this limitation. Southern Gum Co. v. Laylin, 66 Ohio St. 578, 593, et seq., 64 N. E. 564; article 12, § 10, Const. of 1912. It was because of this distinction that the Willis Law was sustained; the charge it imposed being defined as "a franchise tax, and not a tax on property." Southern Gum Co. v. Laylin, supra, 66 Ohio St. at page 578, syl. 6, 64 N. E. 564. The decision, however, did not point out the particular franchise that was affected by the act; that is, whether it was the right of the corporation to exist or its right to exercise the powers contemplated by its charter—its articles of incorporation—or both, though it was said in the course of the opinion (66 Ohio St. 596, 597, 64 N. E. 564) that the fee was not a tax on the stock, since the stock was not owned by the company but by the stockholders. Mr. Justice Day, when considering a kindred statute (of New Jersey) and the different names which had there been applied to a similar charge, said of the provision requiring corporations to "pay an annual license fee or fran-

chise tax * * * on all amounts of capital stock issued and outstanding" (P. L. 1892, p. 136; 3 Gen. Stat. N. J. p. 3338) that it was "a tax imposed by the state upon the corporation for the privilege of existence and the continued right to exercise its franchise." New Jersey v. Anderson, 203 U. S. 483, 490, 493, 27 Sup. Ct. 137, 51 L. Ed. 284.[1] The effect of the New Jersey statute, as thus defined by Mr. Justice Day, would seem to justify imposing the tax while the corporation through permanent dispossession of its property was in no sense active, but simply passive, as respects alike the franchises to be and to do; and yet this hardly could have been intended, since that question was not involved in the case. The tax there claimed and allowed was for the year of the bankruptcy and the year next preceding; and it is worthy of notice that the state did not seek allowance for any year in which the bankrupt company had not, for at least part of the year, exercised its franchises. New Jersey v. Anderson, 203 U. S. 485, 494, 27 Sup. Ct. 137, 51 L. Ed. 284.

The Ohio franchise tax must be laid with reference to "the reasonable value of the privilege or franchise originally conferred, or its continued annual value thereafter." Southern Gum Co. v. Laylin, supra, 66 Ohio St. 578, syl. 3, and page 594, 64 N. E. 564. The court was then, it is true, dealing with a general law and its operation on all corporations of given classes throughout the state, and not with isolated companies which were in the exercise of their franchises, though under such exceptional conditions as would render the tax a hardship (Ohio Tax Cases, 232 U. S. 577, 589, 34 Sup. Ct. 372, 58 L. Ed. 737; Ohio River & W. Ry. Co. v. Dittey [D. C.] 203 Fed. 537, 541—three judges sitting—affirmed in Ohio Tax Cases); still the fact that the statute has survived the restriction so declared in the Laylin Case would seem to indicate that it could not have been the legislative purpose to impose the tax upon any distinct *class* of corporations, such as insolvent companies, whose property has been taken from them permanently and whose franchises are neither exercised nor of any practical value. The obvious burden that must otherwise be cast on the creditors gives emphasis to this view. Indeed, the paramount pur-

---

[1] The difficulty to define the nature and incidence of the tax under the New Jersey act may be seen in decisions of that state. Thus an earlier statute required the corporation to pay "a yearly license fee or tax * * * on the amount of capital stock," and in Honduras Co. v. Board of Assessors, 54 N. J. Law, 278, 282, 23 Atl. 668, 670, this was construed to be "a franchise tax exacted from the company as the price of the right and privilege, which it received from the state, of being a corporation." Lumberville Bridge Co. v. Assessors, 55 N. J. Law, 529, 533, 537, 26 Atl. 711, 25 L. R. A. 134, is to the same effect. Marsden Co. v. Assessors, 61 N. J. Law, 461, 462, 39 Atl. 638, applied the language just quoted from the Honduras Co. Case when considering the tax defined, as above stated, by Mr. Justice Day. In re United States Car Co., 60 N. J. Eq. 514, 516, 43 Atl. 673, 674, says of the exaction: "In fact it is not, strictly speaking, a tax at all, nor has it the elements of one. It is in reality an arbitrary imposition laid upon the corporation, without regard to the value of its property or of its franchises, and without regard to whether it exercises the latter or not, solely as a condition of its continued existence." Hancock, Comptroller, v. Singer Mfg. Co., 62 N. J. Law, 289, 336, 41 Atl. 846, 42 L. R. A. 852, defines the charge to be "a tax on the capital stock of the corporation."

pose of the statute is to tax corporations, which are in control of their property and engaged in the exercise of their franchises. This appears in several ways. It is seen in the provision of the statute which requires the secretary of state to keep a correct list of the corporations "engaged in business" within the state, and monthly to certify reports to the tax commission showing new corporations, changes in capital stock, dissolution of corporations, and giving such other information as the commission may require. Section 5514, vol. 3, O. G. C. It is seen also in the provision which authorizes a corporation, upon mere retirement from business, to secure exemption from the requirement either to file annual reports or to pay the tax, if only it file a certificate of such retirement with the secretary of state. Section 5520, Id., and sections 11974 and 11975, vol. 5, Id.

Further, the remedies best calculated to bring about prompt compliance with the act, and so produce the revenue contemplated, are evidently aimed against going concerns, since those concerns alone would be injuriously affected by enforcement of the remedies. For example, upon failure for 90 days to file the annual report or pay the tax, the secretary of state is clothed with power, if he is not under duty, to cancel the articles of incorporation, when "all the powers, privileges and franchises conferred * * * by such articles * * * shall cease and determine" (section 5509, Id.); but the effect of this may be avoided through compliance with the statute at any time within two years (section 5511, Id.); or, upon such failure, the Attorney General may on request of the tax commission institute suit to enjoin the corporation from transacting business until the report is filed or the tax paid, according as the one or the other failure is involved (section 5512, Id.). It is true, after such failure and on request of the tax commission, resort may be had to proceedings in quo warranto, "to forfeit and annul" the "privileges and franchises." Section 5513, Id. But it is not to be presumed that this remedy would be invoked in the absence of convincing reasons for believing that the other remedies would fail. Where the corporation is in control of its assets, its officers will naturally either yield to the other remedies, or place the corporation in retirement, or voluntarily dissolve it, and so secure exemption. Sections 5520, 11974, 11975, and 11976, before cited. The significance, then, of such a remedial scheme as this, and of the means of retirement and dissolution pointed out, is that they strike at the vital interests of companies worth saving, and force into retirement or dissolution companies not worth perpetuating though having assets sufficient to interest their officers and stockholders. It results, we think, that the statutory provisions thus far alluded to tend to show a legislative design not further to tax an insolvent corporation, whose tax has been paid for every year in any part of which the company exercised its franchises through pursuit of its business, and whose assets have ever since been in course of distribution among creditors under proceedings, such as are involved here, in bankruptcy or receivership. Plainly, as respects a situation like this, resort to any of the special remedies mentioned would be futile in an attempt to compel the corporation itself to pay the tax.

229 F.—57

[3] In view, however, of certain other parts of the statute, to which attention will presently be called, the state contends that the tax accrued against the present corporations after the tax years respectively in which the trustees in bankruptcy and the receiver were appointed, and that it will continue to accrue until formal corporate dissolution (or its equivalent) takes place. We cannot accept this view of the statute; but obviously it is not necessary to pass upon counsel's interpretation of the act as respects a time after the corporate assets are fully converted and applied to the debts. It is now important carefully to discriminate between the part of the statute which distinctly authorizes the tax to be laid, and the parts which either secure payment of the tax or provide for putting an end to it. For it is a long-settled and familiar doctrine, applicable to all forms of taxation, that the legislative body must express its intention to tax in distinct and unambiguous language; the language employed cannot be extended, by implication, beyond its clear import, and well-founded doubts engendered in attempting to apply the statute must be resolved in favor of the taxpayer. Eidman v. Martinez, 184 U. S. 578, 583, 22 Sup. Ct. 515, 46 L. Ed. 697; United States v. Wigglesworth, 2 Story, 368, 374, Fed. Cas. No. 16,690; People ex rel. N. Y. M. & N. T. Co. v. Gaus, 198 N. Y. 250, 255, 91 N. E. 634; Martin L. Hall Co. v. Commonwealth, 215 Mass. 326, 329, 102 N. E. 364; Supervisors v. Tallant, 96 Va. 723, 726, 32 S. E. 479.

[4] One provision relied upon in terms makes the tax the first and best lien on all property of the corporation, "whether such property is employed by the. * * * corporation in the prosecution of its business or is in the hands of an assignee, trustee, or receiver for the benefit of the creditors and stockholders thereof." Section 5506, Id. No lien was provided by the original Willis Act, and so the effect of a lien was not passed on in Southern Gum Co. v. Laylin, nor do we find that it has been considered in any other decision. We have seen that one feature of the relief sought in the present interventions is to have this lien enforced through orders to be entered against the trustees and the receiver. It is not claimed in behalf of the state that the lien operates even indirectly to impose the tax, as a tax, upon the property. To treat the lien as in effect a tax would be to violate the principle upon which the tax was or can be sustained under the Constitution of Ohio; for it scarcely is necessary to say that taxing a corporation according to a rate computed upon its issued and outstanding capital stock is not taxing the corporate property "according to its true value in money." The lien, therefore, cannot have any reason to exist save to secure payment of the tax for such period only as the statute intends that it shall be imposed; the tax failing, the lien must fail with it.

The argument is, however, that the words which immediately follow those specifically creating the lien—that is, the words "whether such property" is held by the company or is "in the hands of an assignee, trustee or receiver"—should be regarded as a source of authority to continue the tax. These words do not purport to authorize a tax to be laid; they refer to one already rightfully laid; and hence the words

are given effect, and we think due effect, when construed, in instances like those now in issue, to apply only to such taxes as accrue before and during the tax year in which the corporate property passes into the hands of "an assignee, trustee or receiver." The lien also is thus given effect; and the other words are, moreover, kept in accord with the paramount purpose of the act as before pointed out in connection with the only provision that explicitly authorizes a tax at all. It is to be borne in mind, too, that the statute does not automatically fix and impose the amount of the tax, which is to be charged against any particular company. The present records fail to show that a tax was in fact charged against any of the companies for the years here in dispute; and the omission seems quite natural, since the words now under consideration certainly do not in terms authorize the tax to be charged as respects such a time against companies which were then in the plight here revealed.

[5] A still further provision, which is found in the chapter of the Ohio statutes relating to "Dissolution of Corporations," is relied on. It is there provided that in case of " * * * the winding up of a corporation * * * by proceedings in assignment or bankruptcy," a certificate to that effect shall be signed by the clerk of the court in which the proceedings are pending and also be filed with the secretary of state. Volume 5, Id., §§ 11974 and 11975. This language, instead of being appropriate to authorize the tax either to be laid or continued, shows an intent to omit the tax. The contention, however, is that the provision requires the tax to be collected through enforcement of the lien against the assets in the hands of a trustee in bankruptcy, unless and until the certificate of the clerk is filed with the secretary of state. This, of course, concedes that the act of filing the certificate would operate to prevent further accrual of the tax; and the concession is rightly made, since the Willis Law by clear implication treats a certificate so filed as a legislative direction to exempt the corporation from the requirement either to make annual reports or pay the tax. Volume 3, Id., § 5520, and vol. 5, Id., §§ 11974 and 11975. The statute employs the words "winding up of a corporation * * * by proceedings in assignment or bankruptcy" to describe a corporate condition, which signifies that the corporation ought not to bear the burden of a franchise tax.

The contention is thus reduced to one concerning the effect of an omission to certify to the existence of the condition. The evident object of requiring the certificate to be filed is to apprise the state officials of the fact that such a condition exists. The condition, however, in each of the present instances, must have been known to the state representatives when they caused the interventions to be made in the bankruptcy proceedings. It is true the interventions occurred after the years had elapsed for which the present tax claims are made; but the opportunity, not to say necessity, to ascertain the dates of commencement of the bankruptcy proceedings, is none the less apparent. The existence of the condition, not the certificate, is manifestly the ultimate token of the purpose not to impose the tax. Surely an omission to give formal notice of the condition was not meant to have the

effect of sanctioning exaction of the tax in the face of actual knowledge of the condition.

The real effect of these two statutory provisions will be more clearly seen when they are considered together and applied to the three corporations in question. The first provision is made applicable where the property is in the hands of an "assignee, trustee or receiver," and the second where the corporation is involved in "winding up" proceedings in "assignment or bankruptcy." It is plain that the terms employed in these two provisions contemplate corporate conditions which may be identical, as, for instance, the property of a given corporation may be "in the hands of an assignee," according to the first provision, and at the same time involved in "winding up" proceedings, within the meaning of the second; and it is manifest that the question of accrual of the tax, or of the means of avoiding it, would have to be tested by a consideration of both provisions. The reason for this is that the second provision is bottomed on a corporate condition, which, in the legislative mind, cannot in justice bear the burden of a franchise tax. It certainly is not to be said that a corporation which would answer to the descriptive terms of each provision would be both amenable to the tax under the first and excusable under the second. It must follow that, wherever a corporate condition such as this actually exists, an exaction of the tax in spite of the condition would contravene a well-defined legislative purpose.

No better illustration of this can well be found than the one presented in the instant cases. It so happens that the particular receivership proceeding involved here is in legal effect a "winding up" proceeding, quite as certainly as it would have been if the corporation had made an assignment under the laws of Ohio; and whether such a course would have been an occasion for a bankruptcy proceeding or not, the Ohio statute, as we have seen, treats the one as well as the other proceeding as signifying a corporate condition that ought to excuse the tax. It is therefore to stick in the bark, to try to differentiate the present interventions by reason of the forms of proceedings which happened to have been resorted to for the purpose, common to all, of turning over the corporate properties to the creditors. Hence we see no reason why the construction which we have already placed on the provision relating to an "assignee, trustee or receiver" should not be applied to the tax claims made in respect of the corporate bankrupts and their assets, as well as to the claim made in relation to the corporation and its assets involved in the receivership; the corporate conditions being the same, the rule ought to work both ways.

[6] Nor, as regards the present question, are we able to see any ground for effective distinction between the cases because of the fact that the receiver was not, and the trustees were, invested with the titles in trust to the property which came into their hands respectively. The question of title of this character does not seem to be the test of the right to recover a tax; for, if it could be rightly said that the tax was intended automatically to continue to accrue and the lien to attach, it is not at all clear that the property in the hands of each of these officials would not be bound regardless of any question of title

in them.  In re Keller (D. C.) 109 Fed. 131, 132, **133**.  It is true that Judge Shiras was dealing with a tax on personal property in Re Keller, but manifestly this can make no difference, since the property here would in the event stated be affected by the lien, the same as it would have been if the incidence of the tax had been the property instead of the franchises.

When we thus treat the interventions alike for purposes of the tax in dispute, we appreciate the fact that we could not do so if the receiver had during the tax years in question conducted the corporation business in the regular way; for he then would have been chargeable with having exercised the franchises.  Central Trust Co. v. N. Y., C. & N. R. R. Co., 110 N. Y. 250, 257, 18 N. E. 92, 1 L. R. A. 260, opinion by Judge (later Mr. Justice) Peckham.  As we understand the facts of the present cases, however, the receiver was during those years no more engaged in exercising the corporate franchises than the trustees in bankruptcy were during the tax years for which recoveries are sought against them.  The corporations were, and so far as appears still are, to all intents and purposes extinct, and so could not then, any more than they can now, exercise their franchises.[2]  The imposition of a tax on franchises implies, if as here it does not express, a privilege to exercise them; and we have seen that the statute contemplates the occurrence of conditions which effectually prevent the use of the privilege.  It is therefore not perceived why the contention that the present tax can be imposed in respect of any of these corporations or the properties is not opposed to the principle of the settled rule prevailing in Massachusetts concerning a similar tax and also corporations in effect similarly situated.  This rule is stated in Commonwealth v. Lancaster Savings Bank, 123 Mass. 493, 496:

"Being a tax upon the privilege of transacting a particular business, it would seem necessarily to follow that if, at the time when the tax is to be assessed and is declared to accrue, the corporation has for the purpose of transacting its business practically ceased to exist and can no longer enjoy the privilege, then no tax is to be exacted."

True, the corporation in that case had been perpetually enjoined from doing any further business, and receivers had been appointed to wind up the affairs of the corporation; but the corporation was permitted to continue its organization for the purpose of doing such acts as were necessary in settling its affairs.  However, in Greenfield Savings Bank v. Commonwealth, 211 Mass. 207, 210, 97 N. E. 927, it was in substance held that the fact alone that the bank was dispossessed of its property, though an injunction was not issued against resumption of its business, was sufficient to excuse the tax.  The Massachusetts rule, as it existed prior to the decision in the Greenfield Savings Bank Case, was recognized as sound by Judge Peckham in Central Trust Co. v. N. Y., C. & N. R. R. Co., supra, 110 N. Y. at p. 258, 18 N. E. 92, 1 L. R. A. 260; and the reason for the ap-

[2] The officers, directors, and agents of the company whose property was in the hands of the receiver were "enjoined from interfering with or disposing of" the company's property "in any way, except to transfer, convey, and turn over the same to the receiver."

proval would seem still to apply, though the rule has in effect been modified in the later Massachusetts decision.

Attention has been called to the recent decision of the Court of Appeals for Cuyahoga county, Ohio, in Morley v. Hippodrome Co., 13 Ohio Law Rep. 295. It was there decided that a franchise tax accruing after appointment of a receiver for the corporation is entitled to preference as against the funds in the hands of the receiver. The facts stated in the report of the decision do not distinctly show whether they are in all essential respects like the facts of the present receivership case, though we regret that the decision in that case and the present decision seem in some particulars not to be in accord. We may be mistaken, however, since the two decisions of the Supreme Court of Ohio, there cited, La Fayette Bank v. Buckingham, 12 Ohio St. 419, and Cheney v. Maumee Cycle Co., 64 Ohio St. 205, 60 N. E. 207, have no apparent relevancy to the receivership case presented here; and if the decision cited from New Jersey (In re West Car Company) was, as we think, meant to be In re United States Car Co., 60 N. J. Eq. 514, 43 Atl. 673, it is not necessarily applicable here, for although it passed upon a "tax assessed" after appointment of the receiver, it fails to state for what period with reference to the appointment the assessment was made.

Upon all the foregoing considerations, we are constrained to believe that the language relied on by the learned counsel for the state is insufficient to sustain the claim that the tax continued to accrue for the periods now under review. The language is certainly not explicit; it is ambiguous, to say the least of it, and so gives rise to doubts which are fatal to the right of recovery. Since the basis of the decision is that no tax accrued, there can be no lien; and hence it is not necessary to pass upon the provisions of the Bankruptcy Act under which it is claimed the tax should be allowed and the lien enforced.

The decree in each case is affirmed, with costs.