## MICHIGAN TRUST CO. v. PEOPLE OF STATE OF MICHIGAN.

### No. 5745.

Circuit Court of Appeals, Sixth Circuit.

Oct. 8, 1931.

B. P. Merrick, of Grand Rapids, Mich. (Travis, Merrick, Johnson & McCobb, of Grand Rapids, Mich., on the brief), for appellant.

Charles Rubiner, of Detroit, Mich. (Wilber M. Brucker, of Lansing, Mich., on the brief), for appellee.

Before DENISON, HICKS, and HICKENLOOPER, Circuit Judges.

HICKENLOOPER, Circuit Judge.

On February 9, 1926, appellant was appointed receiver for the Worden Grocer Company, a Michigan corporation, and operated the business under orders of the court until December 30, 1929, at which time all mercantile assets were sold. The only question presented upon this appeal is whether during this period of operation the receiver became obligated, annually, to pay the so-called Michigan franchise tax, for or on behalf of the Worden Grocer Company, which taxes had not been assessed at the time of the appointment of the receiver but were subsequently levied "for the privilege of exercising its franchise and of transacting its business within this state." Section 4, Act No. 85, Public Acts of 1921.

Although measured by the amount of the corporation's "paid-up capital and surplus," the tax is obviously not a tax upon the

property of the corporation, but an excise tax upon the privilege of doing business in corporate form. Educational Films Corp. v. Ward, 282 U. S. 379, 51 S. Ct. 170, 75 L. Ed. 400; In re Detroit Properties Corp. et al. (decided June 1, 1931) 254 Mich. 523, 236 N. W. 850. In the decision last cited practically all of the authorities upon our main issue are collected, and it would seem useless to review them here in detail, although we shall, of course, refer to many, and shall express our views as to their proper classification.

In re Detroit Properties Corporation also recognizes that a proper decision of this issue depends upon whether the receiver, by operating the business, exercised or used any of the franchises of the corporation.[1] This is manifestly the proper criterion to apply. If he did, liability to the tax would be the liability of the receiver and the fee must be paid by him. If he did not use any of the franchises of the corporation, it is extremely difficult, if not impossible, to justify the imposition of a tax against the receiver, as such. It is true that the corporation itself might remain liable to an annual tax upon the franchise "to be" a corporation, or even upon the franchise "to do" business in corporate form, until the corporation was actually dissolved, a distinction given much weight by the Supreme Court of Michigan, but the receiver takes the property charged only with the debts and liabilities of the corporation, liquidated or unliquidated, which exist at the time of his appointment. It would be immaterial in every case whether the corporation might be held independently liable for taxes thereafter accruing, except and unless the properties or some part thereof were subsequently returned to it or a surplus was distributable to stockholders. Otherwise there would be nothing from which the tax could be paid. The corporation would be but an empty shell.

Relying upon the supposed distinction between a tax upon the "privilege" of exercising the franchise "to do," and a tax upon the franchise "to be," the opinion in Re Detroit Properties Corporation concludes that inasmuch as a receiver normally may conduct only such business as the corporation was theretofore authorized by charter to transact, such receiver is exercising the corporation's franchise "to do." Compare, also, In the Matter of George Mather's Sons Co., 52 N. J. Eq. 607, 30 A. 321. This would seem a non sequitur where the corporation had been engaged in purely mercantile pursuits, "for franchises are special privileges conferred by government upon individuals, and which do not belong to the citizens of the country, generally, of common right." Bank of Augusta v. Earle, 13 Pet. 519, 595, 10 L. Ed. 274. A receiver "is a mere arm of the court appointing him." Converse v. Hamilton, 224 U. S. 243, 257, 32 S. Ct. 415, 418, 56 L. Ed. 749, Ann. Cas. 1913D, 1292. "Immediately upon such appointment and after the qualification of the receiver, the property passed into the custody of the law, and thenceforward its administration was wholly under the control of the court by its officer or creature." Atlantic Trust Co. v. Chapman, 208 U. S. 360, 370, 28 S. Ct. 406, 408, 52 L. Ed. 528, 13 Ann. Cas. 1155; Booth v. Clark, 17 How. 322, 331, 15 L. Ed. 164. Not only in the case of mercantile corporations is the franchise "to do" inseparable from the franchise "to be," and necessarily implied from a grant of the latter franchise, and the distinction therefore somewhat vague, but no good reason appears in such a case why the receiver may not perform, under direction of the court, any act which might be performed by any other citizen, in total disregard of the corporate capacity of the former possessor of the property, and without any reliance whatever upon its franchises. The property is no longer under the control of the corporation. The court and the receiver need no grant from the state of "special privileges" to effect a disposition of such property in accordance with the rules of law and equity. The limitation that the receiver may normally transact only such business as is authorized by the corporate charter arises from the implied contract between the corporation and its stockholders that the money invested shall be used only for such purposes, not from any dependence by the court upon the grant of the powers enumerated by the charter.

The suggested distinction is well enough in the case of a public utility. "No private person can establish a public highway, or a public ferry, or railroad, or charge tolls for the use of the same, without authority from the legislature, direct or derived." California v. Pacific R. Co., 127 U. S. 1, 40, 8 S. Ct. 1073, 1081, 32 L. Ed. 150. Such a fran-

---

[1] No question of the construction of a state statute by the highest court of the state was there, or is here, involved. We do not therefore consider whether it is within the power of the state to levy a tax upon the receivers of the property of private corporations, measured by the amount of the outstanding capital and surplus, but without regard to the exercise by the receiver of any of the franchises of the corporation, or whether such a tax would be valid as to those receivers appointed by a federal court, as distinguished from those appointed by the state courts.

chise is not included in the simple grant under general laws of the right to be a corporation. It is separate and apart from the franchise "to be." Thus, when a receiver is appointed for such public utility, and such receiver proceeds to operate the business, in a very accurate sense he is using the franchise "to do" formerly exercised by the corporation. This is quite plainly suggested by some of the decisions involving railroad or other public utility receiverships. · Collector of Taxes v. Bay State St. Ry., 234 Mass. 336, 125 N. E. 614; N. Y. Terminal Co. v. Gaus, 204 N. Y. 512, 516, 98 N. E. 11; Armstrong, Receiver, v. Emmerson, Sec'ty of State, 300 Ill. 54, 132 N. E. 768, 18 A. L. R. 693; Phila. & R. R. Co. v. Commonwealth, 104 Pa. 80. It is the proper ground, we think, upon which other similar cases should have been decided, although both groups are often rather loosely cited as authority for the proposition that a franchise tax is payable wherever the receiver continues to operate the business, regardless of its nature. Compare Bright v. Arkansas, 249 F. 950 (C. C. A. 8); State v. Bradley, 207 Ala. 677, 93 So. 595, 26 A. L. R. 421; Central Trust Co. v. N. Y., C. & N. R. Co., 110 N. Y. 250, 18 N. E. 92, 1 L. R. A. 260.

Several other lines of authority, clearly distinguishable in principle, are also relied upon by the appellee. In McFarland v. Hurley, 286 F. 365 (C. C. A. 5) and Liberty Central Trust Co. v. Gilliland Oil Co., 279 F. 432 (D. C. La.), corporation franchise taxes, as such, were not involved. An oil severance tax was imposed by statute. Obviously, if the severance be made by a receiver, such receiver is directly and primarily liable for the payment of the tax. The question here presented was not there involved. In U. S. Car Co. Case, 60 N. J. Eq. 514, 43 A. 673, 674, the corporation is held bound to perform the statutory conditions as long as it remains in possession of the privilege. "The sole test * * * is the existence or nonexistence of the corporation." No consideration whatever is there given to whether the assessment is properly against, and collectible from, the receiver, or whether it should more properly be against the corporation and collectible only if and when such corporation again comes into the possession and control of its property. Duryea v. American Woodworking Mach. Co., 133 F. 329 (C. C., N. J.), and Conklin v. U. S. Shipbuilding Co., 148 F. 129 (C. C.. N. J.), add nothing to our knowledge of this subject. No reasons beyond citing the U. S. Car Co. Case are given.

Several cases of mercantile corporation receiverships boldly announce the broad rule that the franchise tax is payable by the receiver whenever he continues to operate the business. Savings Co. v. Motors Co., 116 Ohio St. 95, 101, 155 N. E. 691; People of State of New York v. Hopkins, 18 F.(2d) 731 (C. C. A. 2); Ohio v. Harris, 229 F. 892 (dictum) (C. C. A. 6). These cases, we think, are the result of blindly following an apparent mass of precedent (often inaccurately thought out and expressed) without careful analysis of the facts of such cases, or a determination of the soundness of reason underlying the decision in each. We feel under no obligation to follow this lead.

In cases in bankruptcy, although this is generally said to be by virtue of section 64 of the Bankruptcy Act (11 USCA § 104), franchise taxes which had not accrued at the time of filing the petition are not thereafter collectible from the receiver. N. J. v. Anderson, 203 U. S. 483, 27 S. Ct. 137, 51 L. Ed. 284; N. Y. v. Jersawit, 263 U. S. 493, 44 S. Ct. 167, 68 L. Ed. 405; Bates v. Archer, 288 F. 182 (C. C. A. 6). These cases impliedly recognize a limitation upon the right of the state to tax a franchise which is not in present enjoyment. So, also, where the receiver does not operate the business, or is appointed in proceedings to dissolve an insolvent corporation, or an injunction has issued against the corporation, restraining the further transaction of business by it, the same rule is applied. Ohio v. Harris, supra; Commonwealth v. Lancaster Savings Bank, 123 Mass. 493, 496; Johnson v. Johnson Bros., 108 Me. 272, 80 A. 741, Ann. Cas. 1913A, 1303; State v. Bradford Savings Bank, 71 Vt. 234, 44 A. 349; Greenfield Savings Bank v. Commonwealth, 211 Mass. 207, 97 N. E. 927. But we fail to see the controlling effect of the nature of the proceeding upon the question of whether the receiver is in fact using, or is not using, any of the franchises of the corporation.

▇▇ Finally, upon the subject of whether receivers of mercantile corporations do exercise the corporate franchises, the language of the Supreme Court in United States v. Whitridge, 231 U. S. 144, 149, 34 S. Ct. 24, 25, 58 L. Ed. 159, seems to us controlling: "True, they [the receivers] may hold, for the time, all the franchises and property of the corporation, excepting its primary franchise of corporate existence. In the present cases, the receivers were authorized and required to manage and operate the railroads and to discharge the public obligations of the corpora-

tions in this behalf. But they did this as officers of the court, and subject to the orders of the court; not as officers of the respective corporations, nor with the advantages that inhere in corporate organization as such. The possession and control of the receivers constituted, on the contrary, an ouster of corporate management and control, with the accompanying advantages and privileges." We conclude that here, also, the receiver cannot be said to have used or exercised any of the corporate franchises.

It is contended of this decision, as shown by the case of Flint v. Stone Tracy Co., 220 U. S. 107, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312, that under the Federal Corporation Tax Law of 1909 (36 Stat. 112), the tax was imposed, not upon the franchises of the corporation irrespective of their use in business, but upon the actual doing of corporate business with all the advantages that inhere in such organizations; while here the tax is upon "the privilege" of engaging in such business. This is a distinction without a difference so far as regards a continuance of the existence of the "privilege" to do business. If the right or privilege to continue its corporate business is terminated or lost, and the receiver is not exercising that franchise, but rather powers otherwise acquired, there is no foundation upon which the tax may operate; and to all practical intents and purposes the corporation which has been shorn of all its property and facilities by a receivership has, for the period of the receivership, been ousted of its *privilege* to do business in corporate form, as well as of the actual conduct of its business, as completely as if an injunction had issued or the corporation had been placed in dissolution. Ohio v. Harris, supra. Thus the rationale of the decision in United States v. Whitridge, supra, applies in all its force to the present case.

The dictum in Ohio v. Harris, supra, is disapproved, the decree of the District Court is reversed, and the cause is remanded for further proceedings. Should it appear that a surplus over indebtedness was payable by the receiver to stockholders, for and on account of their stock holdings, such fund would be chargeable with the claim of the state for franchise taxes, for, to this end alone, the corporate existence must be regarded as continued for the stockholders' benefit. But the state may share in the distribution of assets only if and after other creditors and the expenses of the receivership are paid in full. The holders of such claims neither had nor now have any possible interest in the preservation of the franchise. As to them the claim of the state is without that equity which would exist were the stockholders to benefit.

Reversed and remanded.